JAMES N. BURNES, Appellant, v. CHICAGO, ROCK ISLAND AND PACIFIC RAILWAY COMPANY, Respondent.

Kansas City Court of Appeals, May 9, 1910.

1. CARRIERS: Lost Baggage: Principal and Agent: Instructions. A party of Shriners made an excursion trip from St. Joseph to the City of Mexico. A car accompanied them to be used as a combination dining car and baggage car. Plaintiff's trunk, which had been placed in this car, was lost on the trip. There was a controversy as to whether the person in charge of the combination car was the agent of the passengers or of the defendant, but not by virtue of any specific agreement to that effect. Under the pleadings and the evidence the court erred in instructing the jury that defendant's liability was dependent on a specific agreement as to whether the carrier or the passengers should have the care and custody of the baggage in transit.

2. ———: ———: ———. Where a passenger retains custody of his portable baggage, the carrier is relieved of responsibility therefor.

3. ———: ———. Ordinarily when a person takes passage on a train and his trunk is placed in a baggage car he has the right to assume that the trunk is under the care of the defendant's baggage-master, unless the passenger knows that the passengers are furnishing their own baggage-master.

Appeal from Buchanan Circuit Court.—*Hon. C. A. Mos-man,* Judge.

REVERSED AND REMANDED.

*C. C. Crow* for appellant.

(1)   Under the evidence in this case, the company was liable as an insurer of the baggage belonging to Mr. and Mrs. Burnes.   The baggage was not in the sole possession and control of the owners, and under these facts the company is liable.   Railroad v. Lillie (Tenn.), 78 S. W. 1055; 4 Elliott on Railroads, sec. 654.   (2) Essex Allen was agent of the defendant company, although paid by tips.   Perkins v. Wright, 37 Ind. 27. (3)   It was the duty of respondent company, under the law, to carry appellant's baggage.   Hirschsohn v. Packet Co., Sup. Ct. N. Y., vol. 34, p. 521.

*Brown & Dolman* for respondent.

(1)   Plaintiff having had the care and custody of his own baggage, as the jury found, and its loss having been caused on the line of another railway, through the carelessness of his own servant or purely as the result of an accident, and the jury having found that plaintiff entered into a special agreement for a good consideration, limiting defendant's common law liability, defendant is not liable.   Root v. Sleeping Car Co., 28 Mo. App. 199; Efron v. Car Co., 59 Mo. App. 641; 3 Am. and Eng. Ency. of Law, 547; Morrow v. Pullman Car Co., 98 Mo. App. 351; Aiken v. Railway, 80 Mo. App. 8; Griffith v. Railroad, 114 Mo. App. 591.   (2)   The plaintiff's wife signed her ticket and is conclusively presumed to know its contents.   Catterlin v. Lusk, 98 Mo. App. 182, 187; Banking Co. v. Poplin, 129 Mo. App. 121.

BROADDUS, P. J.—This is a suit by a passenger against a carrier for the value of his baggage which was lost en route.

Prior to the 1st day of January, 1908, certain persons of St. Joseph, members of an organization known as the "Nobles of the Mystic Shrine," contemplated going on an excursion to the City of Mexico. A. P. Clayton, an officer of the organization, appointed himself and another member named Wetteroth, as a committee to select the route of travel and as such committee selected that over the defendant's line of railroad. The defendant was to furnish a special train, for the purpose of conveying the excursionists, composed of a baggage car, two sleeping coaches and a dining car; but as the number of the passengers did not justify the defendant in furnishing the dining car that was not provided, and instead one end of the baggage car was fitted up as a commissary department at the instance of Mr. Clayton and John G. Goodrich, the passenger agent of defendant who had charge of and accompanied the excursion. A gasoline stove for cooking was purchased and paid for by Clayton, Goodrich and Wetteroth and placed in the baggage car, and a negro cook was employed by them to do the cooking, who relied on tips from the passengers as compensation for his services. The cook also had charge of the baggage in the baggage car.

Each passenger bought a ticket for the entire trip going and coming and paid therefor forty-five dollars, which was about one-half the usual and ordinary fare. All the tickets were taken possession of by Goodrich for convenience who presented them to the different conductors on the route. The tickets recited on their face that they were issued at a reduced rate of fare and contained numerous conditions some of which are necessary to be stated, viz.: "In selling this ticket and checking baggage hereon the company acts as agent and is not responsible beyond its own line." "Baggage liability of any company over whose line this ticket

reads is limited to wearing apparel not exceeding one hundred dollars in value." There was an advertisement introduced in evidence by the defendant which was headed, "Imperial Special," signed by Goodrich, as "City Passenger Agent," and by Wetteroth, which had been shown to all the passengers and according to the testimony of Goodrich met with their approval. However plaintiff denies having read or approved it. It recites among other things that: "A special baggage car is attached to the train with our own baggage-master in charge. Access to the baggage car may be had at any time. . . . We are not responsible for loss of time, property or money consequent on irregularity of service, calamity or hindrance over which we have no control." Goodrich testified that he got up the advertisement, under the supervision of Clayton and Wetteroth.

The plaintiff did not sign his ticket until he got to the City of Mexico, but his wife signed hers.

The defense relied upon the recitation in the tickets that defendant should not be responsible for any loss not occurring on its own line; and further that the baggage car was furnished by the Missouri, Kansas & Texas Railroad Company, at Dallas, Texas.

The court refused all the instructions offered by the respective parties and instructed the jury at his own suggestion, which returned a verdict for the defendant. The plaintiff appealed from the judgment.

The following instructions given to the jury will explain the theory of the court upon the law of the case:

"If the jury find from the evidence under all the facts and circumstances in proof that there was a specific agreement between the parties by which it was agreed that the baggage should during the trip be in the care and custody of the members of the party and at their risk as to injury and loss, and that the defend-

ant was not to have the care and supervision of the same, your verdict should be for the defendant.

"If, on the other hand, the jury find from the evidence and the facts and circumstances in this case that there was no such agreement plainly understood and agreed to by the plaintiff and defendant, and you find that the defendant has failed to deliver to plaintiff the baggage belonging to him, then your verdict should be for the plaintiff."

The instruction was radically wrong as there was no evidence that there was any such agreement upon which the court predicated its instruction. If there was any such agreement it is to be implied from the facts of the case.

In the beginning it was the understanding that defendant was to furnish a baggage car for the use of the passengers and it did furnish one. The implied duty of the defendant as a common carrier was to take charge of the baggage of the passengers loaded in its car and to exercise such care for its safety as the law imposed upon it as such carrier. The passenger where his baggage is portable may take it with him, and retain possession, thus relieving the carrier of all responsibility for its safety, but in this case the baggage was contained in trunks, which, not being portable by being carried around, had necessarily to be deposited in the car used for the purpose, in charge of the baggage-master.

But there is a controversy as to whether the person in charge of the baggage was the agent of the defendant or that of the plaintiff, not because of any specific agreement to that effect. It was the contention of defendant at the trial that the cook in taking charge of the baggage was acting for the passengers, which plaintiff denied. It seems to us that the evidence to support the contention of defendant was not conclusive. The fact that they paid him tips does not go far to show that he was their baggage-master, not much fur-

ther than tipping a waiter at a hotel dining room makes him the servant of the guest who does the tipping. The fact that he was retained jointly by Goodrich, the agent, and Clayton and Wetteroth, representing the passengers, seems to us to be a dubious kind of evidence to prove that he had charge of the baggage as the agent of the passengers. The employment was as much the act of the defendant as that of Clayton and Wetteroth.

But it is insisted that the recitation in the advertisement that: "A special baggage car is attached to the train with our own baggage-master in charge," shows that the person so in charge was the baggage-master of the passengers. It might be so construed in connection with the evidence of Goodrich, that he got it up under the supervision of Clayton and Wetteroth, but of itself it does not indicate that the cook was to be the baggage-master of either the passengers or the defendant, but of both. This, as evidence, may be taken into consideration by the jury in connection with the other facts and circumstances in evidence to show what the understanding was as to whose baggage-master the person who acts in that capacity was to be.

It was not within the issues made by the pleadings that there was any specific agreement that the passengers were to furnish their own baggage-master, but the defense was that the baggage car was furnished by the Missouri, Kansas & Texas Railroad at Dallas and not by the defendant. Attention is called to this matter in view of another trial.

The plaintiff when he took passage in defendant's train had the right to assume that his baggage would be under the care of defendant's baggage-master, unless it was made to appear that he knew that the passengers were to furnish one of their own, and that was a question of fact for the jury.

The issue raised by the answer that the defendant was not to be responsible beyond its own line was

not submitted by the court to the jury and is not raised by the arguments and briefs of the counsel in this court, for which reason we refrain from any comment thereon. For the reason given the cause is reversed and remanded. All concur.